UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

----------------------------------------------------------------

**UNITED STATES OF AMERICA,**

                                    Case No. 11-CR-238

                    Plaintiff,

                                    Milwaukee, Wisconsin

        vs.

                                    March 29, 2012

**SEAN D. PATRICK,**

                    Defendant.

----------------------------------------------------------------

**TRANSCRIPT OF SENTENCING**

BEFORE THE **HONORABLE RUDOLPH T. RANDA,**
UNITED STATES DISTRICT JUDGE


**A P P E A R A N C E S**

For the Plaintiff:              United States Attorney
                                By: **Mr. Joseph R. Wall**
                                Assistant U.S. Attorney
                                530, U.S. Courthouse
                                517 E. Wisconsin Ave.
                                Milwaukee, WI   53202


For the Defendant:              Law Offices of Jean M. Kies
                                By: **Mr. Lew A. Wasserman**
                                Attorney at Law
                                135 W. Wells St.  #330
                                Milwaukee, WI   53203


REPORTED BY:                    HEIDI J. TRAPP
                                Federal Official Court Reporter
                                310, U.S. Courthouse
                                517 East Wisconsin Avenue
                                Milwaukee, Wisconsin 53202
                                (414) 297-3074




Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

1    **<u>TRANSCRIPT OF PROCEEDINGS</u>**

2          THE CLERK:  Case Number 11-CR-238, United States of

3    America vs. Sean Patrick.  Called for a sentencing hearing.  May

4    I have the appearances, please.  First for the Government.

5          MR. WALL:  Melvin Washington and Joseph Wall for the

6    United States.  Good afternoon, Your Honor.

7          THE COURT:  Good afternoon.

8          MR. FETHERSTON:  Good afternoon, Your Honor.  Jim

9    Fetherston for Probation.

10         THE COURT:  Good afternoon.

11         MR. WASSERMAN:  Your Honor, Mr. Sean Patrick with

12   Attorney Lew Wasserman.  Good afternoon.

13         THE COURT:  Good afternoon.

14         MR. WASSERMAN:  Also wish to point out to the Court

15   that many members of Mr. Patrick's family are here as well.

16         THE COURT:  All right.  The case is here for

17   sentencing, and the Court has read the presentence report, and

18   the Court is prepared to proceed.  The Court is also in receipt

19   today of a letter from Sara Beth Lewis, who is an Assistant

20   District Attorney.  And the Court has read that letter.  Having

21   read the presentence report and having had that opportunity, I

22   must inquire of you, Mr. Patrick, as to whether or not you've

23   had the same opportunity.  So I will ask you, have you had the

24   opportunity to go over, review, and discuss this presentence

25   report with your attorney, Mr. Wasserman?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you or Mr. Wasserman have any

3     objections to any of the factual statements in the presentence

4     report?

5          THE DEFENDANT:  No.

6          THE COURT:  Does the Government have any objections to

7     any of the statements in the presentence report?

8          MR. WALL:  No, Your Honor.

9          THE COURT:  Well, then the Court will proceed to

10    sentencing in the usual fashion, taking into account the range

11    of sentence established by those uncontested facts, which is

12    360 months to life.  And the Court will integrate that range

13    into the factors under 3553, 18 United States Code, which the

14    Court is now directed to do.  And look at, of course, the same

15    things that the guidelines look at, such as the nature and

16    circumstances of the offense -- in this case offenses -- the

17    history and characteristics of the Defendant, and then to reach

18    a decision or judgment not more than necessary to achieve the

19    same objectives.  Such as to reflect the seriousness of the

20    offenses, promote respect for the law, create a just punishment,

21    provide adequate deterrence, and protect the public from further

22    crimes.

23          The Court will listen to the Government's

24    recommendation first, and then defense.  And then, Mr. Patrick,

25    you get the last word relative to your right of allocution.  You

1   get to talk last.  Is the Government going to make a

2   recommendation here?

3           MR. WALL:  Yes, Your Honor.

4           THE COURT:  All right.

5           MR. WALL:  Your Honor, in looking at the Statutory

6   factors under 18 U.S.C. 3553(a) and (C), we start out with the

7   nature and circumstances of the offense here.  The offenses --

8   it's really just a continuing course of conduct as charged over

9   a period of about five years.  The nature of the crime is the

10  sex trafficking of children.  Two of the three individual

11  counts, Mr. Patrick was trafficking children through the use of

12  force, fraud, and coercion.  Essentially violence, including

13  beatings, and other forms of punishment to keep them in line,

14  make sure they obeyed his rules, and most importantly, made a

15  lot of money for him.  As I say, physical abuse and other

16  psychological abuse were a main part of that.

17          So when you start with that, you have some -- you have

18  a very, very serious consideration here under subsection one,

19  the nature and circumstances of the offense.  There's conspiracy

20  to traffic in children for a period of four years here.  He did,

21  Mr. Patrick -- through our investigation we determined that he

22  did target children.  Count 2 involves -- actually all three

23  counts, each young lady was 16 years old when Sean Patrick

24  brought them into his stable and then groomed them to become

25  prostitutes for him.  Among other things, the child victim in

1  Count 2 talked about the number of days she would work, the

2  hours she would work, the abuse she suffered at the hands of Mr.

3  Patrick as a part of his business plan.  Choking, striking,

4  hitting.  Requiring her to have sex with his friends as a

5  punishment for missing the bus to Chicago.  Among other things.

6  The second child victim in Count 3, again, 16 years

7  old when she met Sean Patrick and he recruited her and groomed

8  her to be a child prostitute.  One of the things she says is

9  that he promised me a dream, and she bought it.  And she also

10  talks about the amount of work she did.  The traveling to

11  Chicago six days a week, and then down to five or so days a

12  week.  The physical abuse she suffered at the hands of Sean

13  Patrick.  Numerous, numerous occasions of being struck by him

14  with his fists, objects, choking her.  Making her lie on the

15  ground on her stomach and stomping her on the back.

16  And the third child victim here, again, another 16

17  year old child.  Prostituted for him about three years.  The

18  first child prostituted for approximately five years.  Talked

19  about how he had her prostituting while she was pretty much

20  eight months or longer pregnant with his child.  Second child,

21  three-and-a-half years of this type of abuse.

22  So as I say, it's hard to find a more serious type of

23  crime in the Federal Statutes, outside of some of the child

24  abuse Statutes, of course.  And murder, things of that nature.

25  But this is really very, very high up there in terms of its

1    seriousness.  That very first consideration for the Court, the

2    nature and circumstances of the offense.

3         The Court also has to look at the history and

4    characteristics of the Defendant.  That is pretty much the

5    Defendant's background.  This Court has often talked about

6    individuals who are prosocial and make contributions to the

7    community.  Worked.  Paid their taxes.  Supported their

8    children.  Raised their children successfully.  Many, many other

9    things pointing to prosocial background.  And, unfortunately,

10   when we look at Sean Patrick, we don't see any -- anything like

11   that.  It's an antisocial background.  Really from the age of

12   11.  We start talking about age 11, convicted of -- in

13   Children's Court, theft from person.  Age 14, stolen car.

14   Eluding Police Officers.  Age 14, stolen car, party to a crime.

15   Recklessly endangering safety.  Sent to the Wales School For

16   Boys for a year.  Extended for a second year because of

17   behavioral issues.  That particular offense involved a high

18   speed chase.  He was behind the wheel.  Lights and sirens on the

19   Police cars.  And the Defendant admitted that he intentionally

20   rammed his car into the Police car.

21        Shortly thereafter, at the age of 16, another stolen

22   car case.  Back to Wales for another year.  He's out at the age

23   of 18.  He's convicted of endangering safety by reckless use of

24   a weapon.  If you look at the facts, it's a little scary.  He

25   was seen chasing somebody.  Had a pistol, and he fired two shots

1    at this fellow.  He's convicted of that.

2          A year later, age 19, he's convicted of second degree

3    recklessly endangering safety.  He was shot at first, for some

4    reason.  Then he admitted to firing some shots into a house.

5    Convicted of that.

6          Age 20, criminal damage to property.  Criminal

7    trespass to a dwelling.  Obstruction of an Officer.  Underlying

8    facts, he forced entry into a woman's house, grabbed her,

9    slapped her around, dragged her into a bedroom where they had a

10    violent encounter.  This is age 20.  Convicted of those

11    offenses.  For some reason we have six operating after

12    revocations in a row.

13          And so we get him to the age of 23, 1998, when he --

14    again resisting, obstructing an Officer.  Traffic stop.  He gets

15    out of the car.  He runs away from the Police.  They catch him.

16    A year later he's 24, he's convicted of resisting, obstructing

17    an Officer, bail jumping.  Again, this underlying complaint was

18    that of a battery.  Then we have the three -- three more

19    operating after revocations.

20          And we have a second degree reckless homicide for

21    which he was convicted in State Court just less than two years

22    ago.  May of 2010.  Second degree reckless homicide, use of a

23    dangerous weapon at 23rd and National Avenue.  He shot a rival

24    pimp through the head.

25          I would note that in terms of his criminal history

category he comes out at a level six, but his total criminal
history points are 18. And as the Court knows, 13 or more
criminal history points put an individual at a level six. So
he's topped that.

Let's look at subsection (3) here of 3553(a). And I
always call these the goals of the sentence. That is, what is
the goal of this Court in imposing a particular sentence? And
the ones I look at here -- in this particular case here -- is
subsection (A). The sentence should show -- should reflect the
seriousness of the crime. Something I've talked about already.
Subsection (B) I think a very important one in this case. And
that is to afford adequate deterrence to criminal conduct. And
what I'm talking about here is general deterrence. For this
Court to send a message to other men who would get into this
business that there is a very high price to pay if you get into
the business of trafficking children in a sex trade. I think
that's really one of the primary needs or goals that should come
out of this sentencing hearing today from this Court.

Subsection (e) is very relevant, too, and that is to
protect the public from further crimes. The Defendant -- as I
said, the Defendant targeted children to bring into the sex
trade. I can tell this Court that in Milwaukee Sean Patrick was
considered to be pretty much the king of pimps, both by law
enforcement and by other men who are in the sex trafficking
business. Sean Patrick was looked at as being at the top of the

1  chain.  I think it's also clear from the Indictment and other

2  sections of the presentence report, as I said, that he targeted

3  vulnerable children.  Paragraph 54, by his own words, he said

4  that he did that.  He targeted children who grew up

5  disadvantaged, poor, with no positive male role models.  Those

6  were the ones that he was able to best manipulate.

7  Also in Paragraph 54 he said I sold them a dream of

8  living in mansions, riding in the best cars, and having jewelry.

9  And he went on to state that once he had them hooked, that's

10  when he then turned them into child prostitutes.  And there's a

11  higher premium in the prostitution business, the sex trade

12  business, on -- the younger the prostitute, the more marketable,

13  the more that young prostitute can make for her particular pimp.

14  And again, that was his business plan, really.

15  This is what we have in front of us, Your Honor.  You

16  have in front of you, obviously, the great responsibility.  But

17  you have the very definition of a master manipulator, a predator

18  who targeted the poor, the lost, the confused, the vulnerable of

19  our children, and then guided them into what I have to consider

20  to be the dirtiest, most humiliating, most degrading, and most

21  destructive business that I can really think of, and that is the

22  child sex trade.  And that is what he did.

23  Because of his cooperation in the State -- and you

24  have the letter.  And because of that cooperation, we are moving

25  downward from the guidelines a bit.  I'm asking the Court to

1   impose a sentence of 300 months.  That is 25 years.  No fine.

2   He should be ordered to pay his child support.  I would note

3   that his child support obligation -- he has 12 children -- is

4   more than $146,000 outstanding.  So no fine.  Of course the

5   special assessment is mandatory.  And I believe that five years

6   of supervised release would be appropriate.  Thank you, Your

7   Honor.

8            THE COURT:  All right.  Mr. Wasserman.

9            MR. WASSERMAN:  Thank you, Your Honor.  There is one

10  thing I didn't hear from Mr. Wall that I was anticipating

11  hearing.  And because it's not up to me to put words in his

12  mouth, I would just ask if -- Mr. Wall, if you made the entirety

13  of the recommendation that at least I thought, and not just out

14  of my fantasizing that you were going to make -- made a

15  recommendation for --

16           MR. WALL:  Oh, Your Honor, I'm sorry.  Maybe it's

17  apparent.  I'm asking for concurrent time here, not consecutive

18  time.  I'm sorry, Mr. Wasserman.  You're correct.

19           Your Honor, I should also state that Mr. Patrick sat

20  down with law enforcement.  We did not have much time to sit

21  with him and talk, but we had about 45 minutes with him to talk

22  about some of the hows and ways of the pimping business.  And I

23  can tell the Court that it was quite enlightening for those of

24  us who had the opportunity to sit with him.  So I think those

25  two things should be added.  And I apologize to Mr. Patrick for

1  not clarifying my recommendation.  That should be 25 years

2  concurrent to the State sentence.  Thank you.  And, Lew, was

3  that the concern?

4          MR. WASSERMAN:  Yes, that was my understanding.

5          MR. WALL:  Okay.

6          THE COURT:  All right.  Go ahead, Mr. Wasserman.

7          MR. WASSERMAN:  Thank you.  Couple things I want to

8  clarify.  If you look at Count 1, it certainly indicates that

9  Mr. Patrick knew, and that the Government could prove beyond a

10  reasonable doubt, and he ultimately agreed that the Government

11  could prove beyond a reasonable doubt in Count 1 that the

12  language is this:  It says minor females who had not attained

13  the age of 18 years.  There may be some that would say that the

14  difference between using the language minor female under 18, and

15  child -- for many there may not be a distinction.  But in this

16  case I think it's very important to make that distinction.

17  Because I think the degree of -- the legal term we use,

18  culpability.  But also in the real world I think the degree of

19  moral culpability changes radically in terms of the perception

20  that one would have if you use the term child trafficking.  It

21  conveys a different meaning.  It sounds like what pedophiles do

22  with 8 year olds or 9 year olds.  That's not what we have here.

23          Again, I understand and recognize that apparently for

24  some there is no distinction.  Apparently for Mr. Wall there is

25  no distinction.  But it wasn't charged that way.  Mr. Patrick

made it clear that that wasn't what he was doing or accepting

responsibility for. And I think that there is a radical

difference. The market that he describes by use of the word

child, is not the market -- since he talked about a business

model -- that Mr. Patrick was interested in, nor did he engage

in.

The amount actually of coercion, and the -- what

Mr. Wall referred to as the physical intimidation and abuse --

let me address that issue because that's important, too. You

can paint the picture, but I think it's inaccurate of this being

an operation where on any given moment, on any given day, and

probably every day, which is I think the picture the Government

is painting, that women -- some of them as young as 16 -- were

being brow beaten, tortured, coerced, beat.

Let's back up for just a moment. When you read the

Indictment, when you read the presentence report, you see that

out of 168 hours in a week, the vast, vast, overall majority of

those hours that -- the women and young women are under their

own care and under their own supervision. They are doing

clearly what he wants them to do, but they're not even in the

same city. The idea that he had this omniscience in terms of

being able to monitor their activities, and that they felt they

were being monitored, is I think a gross overstatement.

Now, the other side of the coin -- and this, I guess,

is true -- and you can glean this from the P.S.I., was that

1  there becomes a point where the women, the young women, are self

2  supervising.  I do agree with Mr. Wall that Mr. Patrick was

3  effective in, if you will, not just motivating, but bringing out

4  in all of the women and young women their own hierarchical, if

5  you will, proclivities or motivations to continue to engage in

6  this activity, even when he's not around.

7          Brings me to another point, and that is something that

8  really isn't in the presentence report.  It's not in the

9  Indictment.  Mr. Wall mentioned Mr. Patrick had talked to him

10 for about 45 minutes.  Actually, Your Honor, that -- what we in

11 the business called a debrief -- has occurred on actually

12 several occasions.  The first of which occurred even before the

13 Indictment was issued.  It occurred between the time of entry of

14 the plea and the sentencing in the State case, for which

15 Mr. Patrick is now serving a 20 year sentence.  And it was very

16 informative.  The very same prosecutorial unit that handled the

17 State Court case was present.  It wasn't Sara Beth Lewis.  It

18 was two other prosecutors.  Head of the Homicide Unit, Mark

19 Williams, and another Assistant District Attorney, Kelly Hedge

20 (phonetic).  Linda Stott, a Police Officer who, by the way, is

21 present here today.  And I can tell you this.  Mr. Patrick

22 provided information that was of a nature and quality that all

23 of those individuals involved in the criminal justice system had

24 not seen and not heard before.  As a matter of fact -- and I

25 have conferred with Detective Stott -- although he may take a

1    circuitous route -- but information provided by Mr. Patrick may

2    allow Police to solve -- I guess I would call it the most

3    infamous kidnapping in Milwaukee history.  A still unsolved

4    crime.  But Mr. Patrick, not just because of what he knew, but

5    because of his perceptions involving that crime, it may --

6    there's still the possibility -- like I said, it may take a bit

7    of time -- that the information that he provided then will be

8    the only information that has ever lead to the solving of that

9    crime.

10            Just so it's clear, he was not involved, but knows the

11   people and was willing to discuss with prosecutors and Police

12   what he knew.  He has done that again.  His testimony in the

13   Mario Harris case -- everything Sara Beth Lewis says in that

14   letter is true, but I wish to add something to that.  That is

15   that Mr. Harris wanted to take the defense in his case, his

16   child trafficking case, that he wasn't really a pimp.  He was

17   just sort of a hanger-on.  That it was some of his girls who

18   were really those that were responsible for all this

19   trafficking.  And his attorney made that clear.

20   Mr. Harris's attorney made that clear, that that was going to be

21   the defense that Mr. Harris was doing present.  And, in fact,

22   they did call witnesses and proffer that defense.  The one

23   witness who probably was the most instrumental in debunking that

24   line of defense in Mr. Harris's case was Mr. Patrick.  Because

25   he knew Mr. Harris.  Mr. Patrick also knew that if Mr. Harris

was present, Mr. Harris was the pimp.  It wasn't any of the
females.  That was very compelling testimony.  One never knows
when one goes in front of a jury what a jury is going to think.
But as you can see from the letter, Mr. Patrick in this
particular case was quite helpful.

There are other cases that he will potentially be just
as helpful as he is and was with regard to the case against
Mario Harris.  Now, the question is, why would a jury, why would
Sara Beth Lewis find him so credible?  Because Mr. Patrick is
really a man of uncommon intelligence, and has an almost
miraculous ability to distill down what seems on the surface to
be complicated information, to relatively simple answers.

Mr. Wall and I have talked, and I won't put words in
his mouth, but he and I have agreed that if Mr. Patrick had had
the opportunity to take another turn in his life, he'd still be
operating a business, but it probably would be one of those
businesses that we talk about when we talk about the small
businesses that are the heart of this community.  He has the
intelligence.  He has the skills.  If he could have been in
charge of some type of small manufacturing company, for example,
I have no doubt that it would have been entirely successful.  He
would have taken care of his employees, and he would not be in
the position that he's in today.

But I take a look at this presentence report.
Mr. Wall believes it demonstrates, if you will, an antisocial

personality disorder.  I see it as being something entirely
different.  When you look at a presentence report, and you see a
child of 11 years old come into contact with the criminal
justice system -- I think that was the first one.  I want to
make sure that that's right.  11 years old.  What's the
difference between Mr. Patrick at age 11, and one of the girls
that he trafficked when they were 16?  What's the difference?
Do we really think that when Mr. Patrick was 11 years old that
he was operating on his own?  A sole practitioner out there in
the world, doing what he was doing?  He was doing it for someone
else, just as surely as the 16 year old girls, who Mr. Wall
mentioned, were doing it for him.  That's where he learned.  He
didn't read books or magazines about running the business that
he sits here convicted of running.  It ran him for years.  It
began when he was 11.  He did exactly -- although it didn't
involve sex, he did exactly what older manipulative men in his
community demanded of him, and he did it to survive.  Everything
he did was for the economic benefit of someone else.  Not really
for his own.  It was for his own survival that he engaged in
those activities.  So from the age -- probably -- I -- my guess
would be that it started even younger than 11.  That they
started grooming him when he was 11 years old.  Why?  Because
everyone around him saw he was a really smart kid, and he's got
a very engaging personality.  And he's able to absorb
information around him, like I said, to distill it, and use it,

1   and make something of it.

2        And so he has his first encounter with Police when

3   he's 11.  Probably could have occurred earlier, no doubt,

4   because like I said, he was -- he was groomed for it.  But I do

5   disagree about the belief, I think, that the Government has,

6   that Mr. Patrick is an antisocial person.  If you're simply

7   going to look at the crimes that were committed, you come to

8   that conclusion.  But, you know, when you look at the Diagnostic

9   and Statistical Manual, Fifth Edition, Fourth Revised, there are

10  more criteria.  He doesn't meet those criteria.

11       I take a look at Paragraph 56 of the presentence

12  report where he's asked about the impact that his behavior had.

13  When you first look at this paragraph -- when I first looked at

14  it, I wondered if it was clear to him.  And then, no, he really

15  actually thought about this.  And the presentence report also

16  told you -- let me just preface this by his comments -- that the

17  young women that were the victims in this scheme, they've more

18  or less made themselves unavailable.  And so he says several of

19  the women have continued to prostitute since he was arrested.

20  And that's true.  We all know that that's true.  And so then he

21  says it was difficult from his perspective to explain the

22  impact, because they've continued without any further direction

23  or motivation from him.  And it's actually insightful, because

24  what it told him, and what he's really trying to say here is

25  that, you know, Judge, I take a look at what I did, and I take a

1    look at the effect that it had.  And it's difficult for me to

2    answer, because even without me, it continues.  Was I really

3    that instrumental?  Was I really, I suppose, that -- that

4    effective, I guess, in framing people's character?  That even

5    after I'm out of the picture they continue?

6        And so at first blush I thought that this was sort of

7    a response from someone that didn't care.  Then I realized it

8    was someone that -- it's not that he didn't care, it's that when

9    you really asked him to explain that, he found it difficult to.

10   And that's right.  Because that shows that he thinks about

11   things.  And he just doesn't pop off answers that the

12   presentence writer wants to hear or that he thinks the

13   presentence writer wants to hear.

14       He's a thoughtful person.  He admits what he did was

15   legally and morally wrong.  A person suffering from antisocial

16   personality disorder would not even bother to say that.  He

17   acknowledges his way of life messed up his own life, and messed

18   up the lives of the women even more.  Again, someone suffering

19   from an antisocial personality disorder, they wouldn't care.  I

20   think it's part of the definition.

21       He told Mr. Fetherston that he thinks he does have

22   some mental health and emotional problems.  I don't doubt that,

23   because he's never really had treatment for -- probably should

24   have had treatment when he was a child.  But he never got it.

25   So I think it's, again, an observation on his part that is

1    contrary to any assessment that he's an antisocial personality.

2         He describes feeling like he's a failure.  Not because

3    he got caught, but because he didn't use the skills that God

4    gave him, and the intelligence, in a productive manner.  He

5    admits he had a choice to make in life.  He made the wrong

6    choice.  And he feels this is the last chance he has to be a

7    good person.  To me the saddest part of this entire proceeding

8    is that he could have been a good person, and he could still be

9    a good person.  He has it within him.

10        I also noted that he has obtained his H.S.E.D. during

11   previous incarceration.  In Paragraph 155 he notes that he just

12   wants to do anything that is legal, productive, and will support

13   him.  If given the chance, he'd like to work with

14   underprivileged youth to show them the mistakes he made and help

15   them avoid making similar choices.  He notes at times in this

16   presentence report almost that he feels like two people.  I

17   think that's important as well.

18        Judge, I remember -- Mr. Wall, Mr. Johnson weren't

19   here -- but I remember coming before you I think sometime back

20   in the early 1990's.  And we had a gentleman who we all

21   thought -- and I remember you saying this, Judge -- was a tiger

22   that perhaps had changed his stripes.  And that actually turned

23   out to not be the case, and he came back before you.  I wasn't

24   there with him then.  But he really hadn't.  Because he didn't

25   have two personalities.  That other gentleman really only had

1  one.  We thought maybe he'd changed, but he hadn't.  He didn't

2  have it within him.  But Mr. Patrick does.

3         The two people that Mr. Patrick talks about and wants

4  you to know about, and I agree with him that this is relevant,

5  are the two people that bring him before you and brought him

6  before Judge Cimpl last year in the homicide with regard to

7  Joeren Mason.

8         And then there's the other side of him.  The side

9  that -- he's 37 years old.  So he's too old to be one of my

10  kids.  But I see the same thing in him that I see in my kids,

11  some of whom are almost as old as he is.  And I think to myself,

12  I have an 18 year old who's on his way to Lawrence University

13  Conservatory of Music for piano performance.  He plays Chopin,

14  and Brahms, and Bach.  And I think to myself, what if I had done

15  to that kid, what his community did to Sean Patrick?  And I

16  never stopped doing it?  What if my son, the one that's now on

17  his way to college, National Honor Society, what if I had done

18  to him throughout his life what had happened to Sean Patrick?

19  Would I expect anything different out of even my own son, than

20  what happened to Sean Patrick?

21         And the reason that I equate the two is that

22  internally I see much of the same.  I see a high level of

23  intelligence.  And despite everything that he's done, I see a

24  conscience.  And when you have those two things, when you give a

25  man the means to live and live productively, then they turn out

like my 18 year old.  When you don't give them that, then they come here.  Even though at their core they're not really that much different.

I know Mr. Wall says we need to deter others.  I'm going to be very blunt and say I completely disagree.  I do not believe in general deterrence.  I know that that's somewhat of a radical position to take, but I don't.  And the reason I don't believe in general deterrence is that, Judge, you and I have been in courtrooms together a long, long time.  I've brought Defendants before you.  You've sentenced Defendants.  This goes back a long, long time.  Yet we're still here.  We're still doing the same thing.  Murders are still being committed, more this year than last year, in the City of Milwaukee.  The level of crime is not really going down.  I don't know that general deterrence is really anymore a valid concern, only because the conditions in this city -- I'm not going to speak of other cities.  We're not there.  We're here.  We're in the Eastern District of Wisconsin -- are getting worse rather than getting better.

The jobs available for young men are getting fewer.  Not more.  The jobs that are available for young men are getting to be -- it's all service industry, to put it kindly.  The manufacturing jobs are gone.  The breweries are gone.  There's no more opportunity like there was, Judge, when you and I were young.  Where a young man could go over to North 3rd Street and

1  get picked up by Schlitz and work and earn a living.  He could

2  live on 51st and Villard.  His wife didn't have to work.  They

3  only needed one car, if they had that.  A man could have dignity

4  and honor with a job like that.  Those are all gone.

5          What do we want of this man?  What do we expect of

6  him?  We, as a society, have given him nothing.  And so -- I

7  understand his criminal record.  I get all that.  I do think,

8  though, that the criminal record in terms of the number of

9  points grossly overrepresents the seriousness of the criminal

10  history.  I mean, really.  Driving after revocation?  Driving

11  offenses are the great bulk of his criminal history score.  And

12  in all deference to the State's position, yeah, you know, I get

13  it.  Because he does it again and again.  But really.  Driving

14  after revocation.  Operating after revocation, two points.

15  Operating after revocation, two more points.  I mean, one page,

16  Page 28, 6 criminal history points because he didn't have his

17  license.  So I do think that criminal history category 6

18  overrepresents the seriousness of his history.

19          I have a different recommendation to make.

20  Mr. Patrick is, as I mentioned, 37 years old.  As you know,

21  right now is serving a 20 year sentence for the homicide of

22  Joeren Mason.  I'll just briefly address that.  There's

23  something in the presentence report that -- about that case that

24  it's actually not -- wasn't there.  They interviewed -- I want

25  to make sure I get the name right -- yeah.  Tonisha King, who

1  was with Joeren Mason.  What's not in this report --

2          THE COURT:  What page is that?

3          MR. WASSERMAN:  That's Page 33 and 34, Your Honor.

4          THE COURT:  All right.  Go ahead.

5          MR. WASSERMAN:  What isn't in the report -- although

6  it was in Miss Tonisha King's report to the Police, but it's not

7  in the PSR -- both Mr. Wall and Mr. Fetherston actually have a

8  copy of that report.  She told the Police that Mr. Mason was

9  running back to his car, indicating that he was going to go get

10 his piece.  His thumper.  And it was at that point that -- and

11 only at that point that Mr. Patrick fired at the car.  He really

12 didn't fire at Mr. Mason.  The fact that the State recommended

13 to Judge Cimpl that Mr. Patrick plead to second degree reckless

14 homicide I think supports that conclusion.  Second degree

15 reckless homicide means that Mr. Patrick exhibited criminally

16 reckless conduct, but not conduct evincing a depraved state of

17 mind.  It was reckless conduct.

18          But the other thing that isn't here is that there's a

19 commingling of these two cases.  Mario Harris, who Mr. Patrick

20 testified against, just a couple weeks prior to the homicide of

21 Mr. Mason, attacked Mr. Patrick and beat him severely.  And he

22 didn't just beat him, he mocked him, as you can only imagine

23 occurs on the streets when something like that happens.  The

24 women who notified people on the north side, including

25 Mr. Patrick, that Mr. Joeren Mason was attempting to recruit

them, mistakenly believed that Mr. Mason was the man that had beaten Mr. Patrick a couple of weeks prior.

Now, a terrible tragedy and a crime, the reckless homicide. But it wasn't just something that happened for no reason. It wasn't something that happened simply because Mr. Patrick exhibited any type of animus toward Mr. Mason. The only reason the homicide -- if Mr. Mason had not run back to his van, and told Tonisha King, who told the Police, that he was going to get his gun, both Mr. Mason would be alive today, and Mr. Patrick wouldn't be serving this 20 year sentence.

The 20 year sentence -- nothing we do here today is going to change that. However, I do believe that the Court is entitled to know why I'm making a recommendation of 15 years concurrent. And it is because of this. It's because of everything I've already said. But Mr. Patrick's righting of the wrongs that he knows of I think also help to right the wrongs that he himself has committed. And I think every man is entitled, unless given all the factors it just can't be done, to an incentive, as minimal as it might be, to continue to do what we want him to do from now on. From this day on. The purpose of the criminal justice system, in my view, is to change people's behavior. Yes, there are other considerations. Punishment. Sending a message to him -- although I don't believe in general deterrence. But we want him to change his behavior.

1         When he debriefed on the very day that he pled guilty

2    to the Joeren Mason homicide, he began to walk down that road of

3    changing his behavior.  And to make amends for all that he had

4    done.  All of which predates the date that he pled guilty to the

5    Joeren Mason homicide.  And obviously predates even the murder

6    of Joeren Mason, which goes back to May of 2010.  Not last year,

7    but almost two years ago as we sit here today.

8         So I've worked with this man seated to my right now

9    for all that time.  Since I became his attorney.  And I want

10   this Court to know, because I think it's important, that he's

11   been probably in the last 25 years the most cooperative, polite,

12   and respectful client that I've had to deal with.  He has

13   been -- and everyone that he's talked to, he's been a gentleman.

14   If Mr. Wall disagrees, let him say so.  If Detective Stott

15   disagrees, let her say so.  But I've been there and I've seen

16   it.  He's been helpful, he's been cooperative, and he's been

17   very, very insightful.  And he will continue to be.

18        I think this is the measure of his character.  That if

19   you completely disregard what I'm requesting that you do, he'll

20   continue to be helpful.  Because now that he's walked down that

21   path, I don't see him turning back.  And by the path I mean the

22   path of being, as he told you in the presentence report, the

23   good person that he can be.  The productive person that he can

24   be.  And he's not just doing it for him.  He's doing it for all

25   the people seated behind me as well.  The members of his family.

1 | And his children.

2 | I know he owes a lot of child support but, you know,
3 | he took care of those kids as best he could. He was there for
4 | those kids. I think we sometimes get hung up on the money
5 | aspect of it. I guarantee you, the mothers of those children
6 | got lots of money. The State didn't get it, but they got it.
7 | Did they get it under the table? Yes. Will he get credit for
8 | it? No. Are they here today banging down the door to tell you
9 | that Sean Patrick owes them money? No. Not at all. That won't
10 | happen, because he took care of them.

11 | So, Your Honor, I've probably talked too long, but
12 | I've said what I've said because -- like I said, the man seated
13 | to my right, given the opportunities that those of us sitting
14 | here who are defending him, and prosecuting him, and judging
15 | him, look at their own children, would have reaped the benefit
16 | of that. And society would have reaped the benefit of that.
17 | And after he's paid his penalty, he probably can. I think he
18 | probably will.

19 | And that's why I'm asking for a sentence -- now that
20 | the Government has been gracious enough to indicate to you that
21 | he has offered to the substantial assistance that allows you to
22 | solely -- well, not solely. You have to consider it all,
23 | obviously. But to look at the 3553 factors, and look at this
24 | man. I really think that by age 50 he'll be the person that we
25 | want him to be, and that you insist that he be. And that's why

1  I make that recommendation.  Thank you.

2  THE COURT:  All right.  Now, Mr. Patrick, you have a

3  right to speak.  Is there anything that you wish to say before

4  the Court passes sentence?

5  MR. WASSERMAN:  He's asked me a question.  If I could

6  just --

7  THE COURT:  Sure.  Go ahead.

8  (Whereupon a discussion was held off the record

9  between Mr. Wasserman and the Defendant.)

10  MR. WASSERMAN:  Your Honor, he wants me to indicate to

11  you -- I think this is what he means -- that I've been hopefully

12  eloquent enough that he doesn't know what else to add to what

13  I've already said.  I really have already said what he himself

14  would say, and he's content with what you've heard.

15  THE COURT:  Well, Mr. Wasserman, you were as eloquent

16  as you always are, and -- however, I want to make sure that

17  Mr. Patrick by that is indicating that he does not wish to make

18  any -- say anything else?

19  THE DEFENDANT:  No, sir.

20  THE COURT:  All right.  Well, as indicated the Court

21  has to take the range of sentence established by the guidelines,

22  which calls for a 360 month sentence on Counts 2 to 3, to life.

23  And the first count carries a 60 month sentence.  The Court

24  integrates that into the factors under 3553 which, as the Court

25  has just indicated, have been discussed -- or not just

1  indicated, but as the record indicates have just been discussed

2  by the prosecutor and by Mr. Wasserman.  And those factors are

3  the same things that the guidelines look at.  The Court has

4  already stated them.  The nature and circumstances of the

5  offense.  In this case, offenses.  The Court has to look at the

6  history and characteristics of the Defendant, then make a

7  disposition not more than necessary to achieve the objectives,

8  which are the same as the guidelines.  And they've been

9  discussed by counsels also.  To reflect the seriousness of the

10  offense, promote respect for the law, create a just punishment,

11  provide adequate deterrence, and protect the public from further

12  crimes, while taking into account the needs of the Defendant.

13        The Court starts its analysis, of course, the way the

14  Government started it out, the nature and circumstances of the

15  offense.  In this case offenses.  There are four counts.  The

16  Court would take up Counts 2, 3, and 4 which are essentially the

17  same.  They all involve underage girls who were put into

18  prostitution and beaten, coerced, sexually abused, and a variety

19  of other things.  In fact, Count 4 when it was discovered that

20  that particular victim -- and I'll call her a victim -- was a

21  runaway, the girl was taken out of State, which might even be

22  characterized as a kidnapping.  Outside of all of this activity

23  involving these -- inside all of this activity involving all of

24  these counts was credit card theft, pin numbers stealing, credit

25  card fraud.  You've got a whole bunch of stuff mixed in with

1    these four counts.  So they're very serious offenses.  I'm not

2    going to go into a discussion again of what the seriousness is,

3    because Mr. Wall has covered that very adequately.  Talking

4    about the destruction of the psyche.  Talking about the missed

5    opportunities that has been argued by the defense that these

6    young ladies would have had, had they been taken on a different

7    path, had they not been encouraged.  As the defense has also

8    argued, they've already taken.  But some of them, as we all

9    know, are -- as the last count indicates, Count 4, runaways.

10   People who are looking for a better life.  People who are

11   looking for something that's missing in their life, and then

12   they step into the ambit and realm of you, Mr. Patrick, and it

13   worsens.  And you have admitted that to the presentence writer.

14   It's a very, very serious series of offenses that we have here.

15   We're at, as Mr. Wall has indicated, at the highest order.

16          Now, having said that, I look at the nature and

17   circumstances -- or the history and characteristics, I should

18   say, of the Defendant.  That is, Mr. Patrick, everybody that

19   comes in front of me has a profile.  Everybody's unique.

20   Everybody is an individual.  Everybody has to be assessed given

21   their own background.  And that's what the presentence report

22   has done.  That's what Mr. Wasserman, your attorney, has

23   eloquently argued.  And the Court takes all of that into account

24   and looks at the positives.  It looks at the negatives.

25          When I look at your record, I have to agree with

1  Mr. Wall that there's nothing but negatives here.  Now,
2  negatives that have been explained very well by -- or at least
3  an excellent attempt made by Mr. Wasserman, your attorney.  And
4  I'm not going to go through all of that.  You, by your own
5  admission -- we look at your family.  You didn't have a father
6  in your life.  And according to this presentence report, he was
7  in your life on and off up until about the age of 12, but it's
8  at the age of 11, as Mr. Wasserman has indicated, you came in
9  contact with the criminal justice system with the theft from
10  person.  Jacking bicycles from other people.  And then you went
11  into Ethan Allen, of course.  And then operating vehicles
12  without owner's consent.  And what the Court read in this
13  presentence report is that you were someone who minimized your
14  conduct, and efforts had to be made to make you appreciate the
15  wrongfulness of your conduct.  That wasn't understood at the
16  time.  Your stay at Ethan Allen also suggested that at one
17  point, because of all the disciplinary actions, and because you
18  had to be extended, you were categorized as an uncontrollable
19  young man.
20       Mr. Wasserman has indicated that's what the community
21  did to you, because there aren't jobs in the city.  Of course,
22  this was -- this was back in '88, at the end of the Reagan
23  revolution.  Employment was booming after the great recession of
24  1979, 1980, that was inherited by that administration.  But
25  President Clinton took it on.  So there were job opportunities.

1    Unemployment was at this point -- but I've been doing this for
2    as long as you've been living, almost.  37 years.  You're going
3    to be 38 in December.  So that changes -- or September, excuse
4    me.  So that changes just a little bit the actual comparison.

5            But it's my belief, and it's based on experience, that
6    poverty doesn't cause crime.  Crime causes poverty.  You see a
7    grocery store in the neighborhood that's functioning, and then
8    you get somebody who busts the window and takes stuff out of it.
9    Pretty soon that grocery store is boarded up.  People drive by
10   that, and they know exactly what happened there.  This is an
11   unsafe neighborhood.  I'm not going to start a business here.
12   And so that is kind of like James Q. Wilson, who died.  You
13   don't know who he is, but he had the broken window theory.  And
14   that's been a much discussed theory in criminal justice.  And
15   it's little things like that, as he posited, that start this
16   snowball effect.  Starts rolling and soon things start looking
17   pretty bad.  The neighborhood starts to decay.

18           I noticed that you were living on 6th and Locust, a
19   block from the Fifth District -- or two blocks from the Fifth
20   District, I believe.  Approximately.  When I was growing up, I
21   used to go to Borchert Field there.  Used to have a baseball
22   diamond there.  I used to walk those streets.  So I was a
23   product of those streets, you know.  And you indicate to the
24   presentence writer I was a product of the streets.  I walked the
25   same streets.  Went to the baseball games on Sunday afternoon

1    when the Milwaukee Brewers of the American Association were

2    there.  Of course, that field is torn down.  It was on Chambers

3    there.  Which is, you know, two blocks from Locust.  There's

4    Hadley, and then there's Chambers.

5         And so we've got the juvenile justice system which is

6    attempting to straighten you out.  And you get out, and as

7    Mr. Wall has said, back to stealing cars.  Hooking up with the

8    Black Gangster Disciples.  Taking a little marijuana.  And then

9    ultimately getting into a marijuana habit which, according to

10   the stuff you gave to the presentence writer, resulted in about

11   10 to 15 blunts a day, which was cutting into your profits.

12   Because you said I was only making about four grand a month.  I

13   was using about a thousand of that, spending it on that alone.

14   I don't know how much money is left over to take care of 12

15   kids.  And I'll get to that later.

16        But this whole record -- even though the OAR's are

17   constant and consistent and are -- as characterized by your

18   attorney, not significant crimes -- they're very significant

19   crimes.  It shows that you're thumbing your nose at the law.

20   And it's been my experience, too, that if you can't obey the

21   small things, you're not going to be obeying the large things.

22   If you can't tell the truth in small things, you're not going to

23   tell the truth in large things.  It just works out that way.

24   It's like being a little bit pregnant, right?  You can't be a

25   little bit pregnant.  Either you're a liar, or you're not a

1  liar.  Either you're a law violator, or you're not a law

2  violator.  Either you obey the law, or you don't obey the law.

3  Regardless of what the law is.  And that's what your record

4  suggests.  So when I do this analysis, it's nothing but a huge

5  negative here.

6         And, you know, you pick up the possession of

7  controlled substances when you're 33, 35.  But this is about the

8  time that you, according to this presentence report, start doing

9  what you're in this courtroom for.  And that runs for about 9

10 years.  Almost a decade.  Probably before that, because it looks

11 like -- some of these offenses suggest to me that you were

12 getting your feet wet in this area.  And you said you went into

13 it because you saw movies and you saw the glamorous life of the

14 pimps.  You always wanted to be rich.  And, therefore -- that's

15 the lifestyle that you took.

16        Well, that resulted ultimately, of course, in two

17 years ago -- or approximately two years ago shooting Mr. Mason.

18 Second degree recklessly endangering safety.  I was on the State

19 bench for 17 years.  I know what that is about.  It's a matter

20 of proof.  But according to the witness, he's sitting in the

21 car.  The first shot shatters the window.  The next one goes

22 into the right side of his brain.  Travels at a leftward angle

23 down and lodges in the left part of his brain.  So that's a

24 shooting downwards.  That's the angle of the bullet.  When I

25 take those facts, that's not recklessly endangering -- reckless

homicide.  Second degree reckless homicide.  That's first degree

homicide.  And then you call up Miss Boucher (phonetic), I think

was her name, from -- a name out of the past.  You're in big

doo-doo now because you're going down.  You got witnesses.

Everybody has got witnesses.  You lost control of your temper,

just like you did when you started beating up these women in

your stable, right?  You got pissed off.  That son of a bitch,

Mason, is taking my girls.  And you went over there and you

executed him.  And you made a big mistake.

So what do you do?  You call up Mrs. Boucher, who was

an advisor over at Ethan Allen, and started crying to her.

Saying someone thinks I shot somebody.  That's what's in the

presentence report, anyway.  I mean, there's not even an

admission that you shot this guy.  You tell Miss Boucher, you've

got to help me.  I wish -- and this ties in with what

Mr. Wasserman, your attorney said.  You said you know, I wish I

had listened to you when I was at Ethan Allen.  Because you said

that I could make something of myself.

Now, that leads me to the discussion of what the

community did to you.  Because Mr. Wasserman has made the

argument that the community did this to you.  That can't be

accepted, because when you were 16, at Ethan Allen, this woman

was telling you, you've got to change your ways.  We're doing

everything we can to help you do that.  And you yourself said

you know, I grew up -- my Mom did everything for me.  She tried

1  to do what was right by me.  We always had a warm bed to sleep

2  in.  We always had food.  Most of the Defendants that come into

3  this courtroom say Judge, I was abused as a child.  My Dad

4  whipped me with an electrical cord whenever I got out of line.

5  And he was a raging alcoholic.  Or my mother did that to me, and

6  so I've got this warped psyche.  But the criminal justice system

7  stepped in early.  And maybe the criminal justice system -- it's

8  been my belief that early punishment is probably best.  It

9  stepped in.

10        And as Mr. Wall has indicated, you had that

11  endangering safety by conduct regardless of life when you shot

12  twice at a person running down the street.  And then a couple

13  years later, maybe even less -- I think it was probably the same

14  year -- second degree recklessly endangering safety where you

15  pumped some rounds into an occupied building.  And what did the

16  criminal justice system do?  A stayed sentence.  Now, at that

17  point maybe the point should have been made, Mr. Patrick, Sean,

18  you've been screwing up for the first 19 years of your life.

19  It's time you learned a lesson.  It's time you went to prison.

20  But that wasn't done.  And so we have this pattern that you got

21  very comfortable with.

22        You have no employment record.  You admit to the

23  presentence writer women have taken care of you your whole life.

24  You had those three places that you worked at, but for short

25  periods of time.  You were a member of the Black Gangster

1    Disciples for awhile.  You've got five other arrests besides all

2    these numerous other arrests.  And some of those were for

3    battery.  And some of these cases that I've got relative to

4    actual crimes, like the criminal damage to property, and

5    criminal trespass to property -- and the obstructing an Officer

6    involved the slapping of a women around, as Mr. Wall has

7    indicated.

8            So I'm looking for the positives here.  I'm looking

9    for the positives here.  Because I've got to weigh the

10   positives, and I've got to weigh the negatives.  I can't see

11   any.  And you've got 12 kids.  Mr. Wasserman says well, you

12   know, he's really with those kids a lot.  Well, those 12 kids

13   are going to not have a father, and don't have a father, just

14   like you didn't have a father.  Twelve kids by 10 different

15   women.  I mean, my God, how can you even satisfy 10 different

16   women?  I can't even satisfy my wife.  And I've got to pay

17   constant attention to her so that we have a reasonable

18   relationship.  That's not a family.

19           That's another thing that causes crime.  It's the

20   destruction of the family.  All the sociologists say that.  You

21   know, the way to succeed in this society is to go to high

22   school, get a degree, work at McDonald's for just a year.  Just

23   show up on time.  Build an employment record.  Got an H.S.E.D.,

24   and you become a valued employee as far as some employer goes,

25   because employers do the same thing that Judges do.  They ask

how is this guy going to behave in the future?

Now, Mr. Wasserman has made an eloquent argument that, Judge, he's changed. And you've indicated that in the presentence report. But the best way to determine how someone behaves in the future is how they behaved in the past. Employers use that standard. They call the prior employer. What kind of a guy was this? Well, he showed up late for work. And then when he was here, he didn't really do a lot. And then after payday he didn't show up. Probably spent his paycheck over at the local bar. Or maybe went to the local crack house, or did something like that. A guy's not going to hire him.

Or the guy who rents a property. Calls the prior landlord. What did he do? Well, he was late on his payments. He didn't pay his rent. In fact, his cousin came over when he left, and they took all the copper out of the place. Sold it at the junk dealer. He's not going to get a place to rent.

And so now the Judge says how is this guy going to behave in the future? Well, Judge, look at what he did in the past. Yeah, but Judge he cooperated. I've got a letter here from Sara beth Lewis in a State case. And the Government here has indicated that, you know, he's given us some information. But it's not a 5K1 motion. I can't -- I can't act on that at this point. There's no way I can act on that.

MR. WALL: Your Honor, it is a 5K1 motion.

THE COURT: I didn't receive one.

1        MR. WALL:  I meant it to be an oral 5K1 motion by my

2   recommendation of 25 years.

3        THE COURT:  Well, then the Court has to consider the

4   5K1 motion to determine whether or not the Court should grant

5   it, right?  And there are certain factors, and I'll place those

6   on the record now, as to whether or not the Court should grant

7   the 5K1 motion.  The 5K1 motion is determined by whether or not

8   the information was relevant, timely.  Whether or not it's --

9   the degree of weight placed on it by the Government.  The

10  Government has placed a large weight on it.  The Court doesn't

11  have to consider all the factors as being met, because they're

12  not exclusive.  The Court finds that there are enough -- enough

13  have been met to grant the motion, so the Court is going to

14  grant the motion.

15       Now, the Court is going to consider its sentencing in

16  that light and in that regard.  I was going to sentence you to

17  life in prison, Mr. Patrick, because you have ruined the lives,

18  for the rest of their lives, of a lot of people that you came

19  into contact with.  Especially these young ladies.

20  Mr. Wasserman has made the argument that these young ladies were

21  Hell bent to become prostitutes in any event.  But that is not

22  the case always.  Responsible adults step in and they say young

23  lady, you don't want to do this.  You certainly don't do

24  anything to encourage it.  And it's by your own admission, you

25  made their lives worse.  But because of your cooperation I'm

1    going to sentence you to 360 months.  I'm going to run that

2    consecutive to the sentence you're serving for the second degree

3    reckless homicide.  And then I'm going to place you on

4    supervised release for a period of 5 years, all to run

5    concurrent.

6        So it's 60 as to Count 1; 360 as to Count 2, 3, and 4.

7    All run concurrent, but consecutive to Court Case 10-CF-002423.

8    The special assessment is $100 on each count, total of 400,

9    payable in Room 362 of the Clerk of Court's Office.

10       Report to the Probation Office -- well, that's 3 years

11   as to Count 1 relative to the supervised release.  That has to

12   be the maximum on that.  Report to the Probation Office in the

13   District in which you're released within 72 hours of release.

14   You can't possess any firearms or dangerous weapons.  Not

15   possess any controlled substances illegally.  Participate in a

16   program of testing to include not more than 6 urinalyses tests

17   per month.  Residential or outpatient treatment for drug or

18   alcohol abuse.  Provide any and all financial information to the

19   Probation Office as requested.

20       File any and all income tax returns in a timely

21   manner.  That has never been done.  The Court has not commented

22   on that, but that's a negative also.  In other words, you've

23   been freeloading off of our society, Mr. Patrick, your whole

24   life.  You've contributed nothing to this society as an

25   American.  You know -- I mean, when you're an American, you're a

special person.  We're unique in the world.  You know, America
only makes up four-and-a-half to five percent of the world's
population, yet everybody wants to come in here.  And it's
because it's a free society, with a great criminal justice
system, and a system of justice that allows people to operate in
freedom.  Keep the fruits of their labor and always get due
process of law.  People should get up in the morning and say
what can I do to make this society better?  Not get up and say
how can I make this society worse.  And at minimal, at minimum,
contribute in some way, shape, or form to your very existence as
an American.

And so when I see here that you haven't paid taxes,
you're freeloading off the rest of us.  That's a huge negative.
And, you know, your 12 kids?  Ultimately the American taxpayer
is going to be paying a lot of their support, if not right now.
Think about that.  So not only are you violating the law, but in
your face.  In your face, America.  You're not doing anything to
support it.

Register with the State and local authorities as a
convicted sex offender.  You cannot have any contact with
children under the age of 18 unless approved in advance in
writing by your supervising Probation Officer, and only in the
physical presence of a responsible adult who has been advised by
your history, criminal history, of inappropriate contact with
minors.  And shall report within 8 hours to the Probation Office

1    any unauthorized contact with children.  Now, that does not

2    extend to your own children.

3         Participate in a program of sex offender mental health

4    assessment and treatment.  Now, I'm using this as a condition of

5    supervised release because Mr. Wasserman has made the

6    argument -- and he did in his usual, eloquent fashion -- that,

7    you know, there's a distinction here between these people that

8    were involved in your organization, what we term a child.  And

9    of course the Court knows the difference between an 8 year old

10   and a 16 year old.  8 year old hasn't reached puberty.  But when

11   you're 16, you don't know what's going on.  And if you're a

12   vulnerable person, like a runaway, you particularly don't know

13   what's going on, and you've got all these concepts.

14        Mr. Wall has made this comment about you saying that

15   -- this comment about the victim's statement that he was going

16   to allow me to live my dreams.  Well, that's what 16 year olds

17   think.  They think that by dreaming they can achieve something

18   out of thin air.  It's hard work.  Takes discipline.  Takes

19   right behavior.  And all of that has to be inculcated into them.

20        You know, the brains of the human being doesn't stop

21   growing until 25.  That's why rental car companies don't rent to

22   people who are 25 years or younger.  You say come on, Judge.

23   No, they don't rent to people under 25.  Why?  Because they know

24   from all the analyses that they've done that it's unprofitable

25   because someone who's got a 25 year old brain or younger has not

1  had his judgment developed to the full extent.  He's not mature.

2  Or she isn't mature.  And you go 9 years down the road to a

3  16-year old, you tell me what kind of brain development, what

4  kind of judgment those people exercise.  Very little.  And

5  that's why I'm imposing this as a condition of supervised

6  release.  Mental health treatment for that.  Maybe further

7  information will be shared by those people, as the Court has

8  shared with you today.  But as approved by the supervising

9  Probation Officer until released from the program by the

10  supervising Probation Officer.  This assessment may include a

11  polygraph to assist in planning and case monitoring.  Any

12  refusal to submit to such an assessment or test is a violation

13  of the conditions of this supervised release.  Pay the costs of

14  the program.  Waive all rights to confidentiality regarding sex

15  offender mental health treatment in order to allow release of

16  information to the supervising Probation Officer, and to

17  authorize open communication between you and the supervising

18  Probation Officer, and the treatment provider.  And register, as

19  the Court has indicated, with State and local authorities as a

20  convicted sex offender.

21          The Court has already imposed the mandatory special

22  assessment pursuant to the mandatory Victim Restitution Act of

23  1996.  The Court will, if there's any credit that has been

24  accumulated in Federal custody on this offense, that it be

25  credited by the Bureau of Prisons.  That will be calculated by

1  the Bureau of Prisons.

2         And the Court having rendered its disposition, is

3  there any question as to the Court's disposition from the

4  Government?

5         MR. WALL:  Yes, Your Honor.  Just one thing for my

6  Appellate record.  The Court does understand, as Mr. Wasserman

7  pointed out, that my recommendation was 25 years imprisonment

8  concurrent to the State sentence.

9         THE COURT:  I know what the recommendation of the

10 Government was.  But it's clear that the Court does not have to

11 accept the recommendation of the Government.

12        MR. WALL:  Thank you, Your Honor.

13        THE COURT:  And the Court has not accepted the

14 recommendation of the Government.  Any questions, Mr. Wasserman?

15        MR. WASSERMAN:  Well, only with regard to the

16 conditions of supervised release, now that Mr. Wall has

17 clarified the issue of consecutive and concurrent.  If my math

18 is right, these conditions all kick in when he's 87 years old.

19 That's a lot of conditions for someone that old.  Perhaps --

20        THE COURT:  Well, the Probation Officer has discretion

21 to alter those conditions, as the Court has stated, if indeed

22 and in fact the conditions don't apply.

23        MR. WASSERMAN:  All right.

24        THE COURT:  The Clerk has asked me about child support

25 payments as a condition of supervised release.  The Court is not

1 going to make that recommendation as far as supervised release

2 goes. The Court doesn't have any confidence that any of that

3 will ever be paid, anyway. The Court will inquire as to whether

4 or not there are any other questions, Mr. Wasserman?

5          MR. WASSERMAN: No.

6          THE COURT: Mr. Patrick, do you have any questions

7 about what the Court did here today?

8          MR. WASSERMAN: I'm sorry. Mr. Patrick was talking to

9 me.

10          THE COURT: Okay.

11          MR. WALL: Notice of Appeal? I'm not sure --

12          THE COURT: I haven't got to that point yet, Mr. Wall.

13 I'm asking Mr. Patrick if he has any questions about the Court's

14 disposition.

15          THE DEFENDANT: No.

16          THE COURT: Then I have to advise you of your appeal

17 rights. You have 14 days to appeal this case. If you can't

18 afford an appeal, a notice will be filed on your behalf by the

19 Clerk of Courts. And Mr. Wasserman, you will file a Notice of

20 Appeal if Mr. Patrick decides to do that?

21          MR. WASSERMAN: I will file the Notice of Appeal. I

22 do have a question, though, about a recommendation. Mr. Patrick

23 would like to be as close to this area as the Court deems

24 appropriate.

25          THE COURT: All right. The Court will make that

1    recommendation.  Anything else?

2          MR. WALL:  No, Your Honor.  Thank you.

3          THE COURT:  The Court will stand in recess until the

4    next case.

5                              *     *     *

1  UNITED STATES DISTRICT COURT

2  EASTERN DISTRICT OF WISCONSIN

3

4          I, HEIDI J. TRAPP, Official Court Reporter for the

5  United States District Court, Eastern District of Wisconsin, do

6  hereby certify that I reported the foregoing Transcript of

7  Proceedings; that the same is true and correct as reflected by

8  my original machine shorthand notes taken at said time and place

9  before the Hon. Rudolph T. Randa.

10

11                              _____

                                Official Court Reporter
12                              United States District Court

13

14  Dated at Milwaukee, Wisconsin,

15  this 29th day of April, 2012.

16

17

18

19

20

21

22

23

24

25